Yes, Your Honor, my name is Carl Gunn. I represent Mr. Sexton. Mr. Gombiner and I have talked and we'll just split the time evenly. Of my ten minutes, I'm going to try to save two minutes for rebuttal if I could. Okay. There's a lot of issues in this case that I've briefed. I certainly want the court to direct me to any that it has particular questions about. Absent that or until that happens, I thought I'd start with the issue of the incorrect address on the search warrant. A couple things I think the court needs to keep in mind about that issue is it's important, even if you find the consent permitted the search of the Chevy Cheyenne in the first search, because there wasn't a consent that saves the government on the second search. I think that's pretty strong. And there was not harmless error from what was found in the second search. So let's focus on, because I agree with you that it's a separate issue from consent. Was there any possibility that the wrong address would be searched here? I mean, they followed these people to a specific place. They knew where it was. The address is technically wrong, but they went right to the place that they – so the reason what we want a good address on a warrant is we don't want the cops to have the ability to roam around and search. I think that's the crux here, your Honor. That's not the reason. That's one reason. But there's a second reason that the Supreme Court recognized in Grover v. Ramirez, and that second reason is what you really need to focus on here. The warrant is not just – I mean, it's almost every case the officer is going to know what they mean to search. It's sort of – I was sarcastically saying maybe you trust us with the police. But the second purpose of a warrant, your Honor, and it's a very important purpose also, especially if you take it back to colonial times and what warrants were for and so on, is to let the person whose property is being searched know that that's what the cops are entitled to do. And, you know, they're going to say, well, Mr. Saxon and Mr. Cattells, they knew. Well, first of all, they didn't know what the judge had authorized. They just knew what the cops wanted. Excuse my cops language. And what they said okay to at the beginning. Well, maybe, maybe not, but that's another issue. Did they think they were giving permission to search some property in a different town? Well, they didn't know what the judge had said. On the warrant, if they looked at it, they saw the warrant said a different town. Did they have any doubt as to what property was a subject of interest? I mean – Well, they might have had – You might have asked the consent issue, but it seems to me everybody knew what the property was. Well, two things. First of all, they might have had a doubt about what the judge had authorized, which is the question with the warrant. And second, it's not just Mr. Saxon and Mr. Cattells. Well, suppose the owner had happened along. The owner was entitled to know. Sometimes you have search warrants executed on a property where a person isn't there. Sometimes they show up. The person – there are other people who had an interest in the search of this property besides Mr. Saxon and Mr. Cattells. They can assert their interests. I'm sorry? They can assert their interests. I don't hear anybody complaining. Well, that's correct, but we're talking about why the warrant isn't valid or invalid depending on – But that's not the case law, is it? Doesn't the case law say that if you have an incorrect address on a warrant and, A, there's no reasonable – the first issue I talked to you about – and, B, there's no evidence that it was done through recklessness or deceit or anything else, that that technical problem doesn't invalidate the warrant? I don't think that is what the case law says, Your Honor. The Williamson case from the Tenth Circuit clearly says the contrary. It says that any incorrect address invalidates the warrant. Unless there's an additional description in the warrant that makes it clear that it's just a technical mistake, which there was in all of the Ninth Circuit cases that the government relies on. Is there any doubt here that it was just a technical mistake? I'm sorry? Looking at all the facts available to us, is there any doubt that this was just a technical mistake? There may not have been some additional language in the warrant itself, but you take a step back, nobody's got any doubt as to what the property was supposed to be. Right. Well, there's no doubt about what the officers meant. What the judge meant, of course, the judge was just using whatever they said. The judge meant the address in Mill Creek. The judge would have responded differently if it had a different town name? No, no. But what the judge was authorizing was that if someone showed up at that address, if the owner had showed up at that address, or if Mr. Sexton and Mr. Cattells were thinking, well, the warrant doesn't say this, the warrant doesn't say that. And the case law, I mean, otherwise you're basically saying the warrant doesn't matter, as long as the cops did what they had to do. Counsel, with respect, I think you're talking about Tenth Circuit cases and so on. We've got Ropes, Mann, Garza, and Turner, at the least, in our circuit, that set out six factors that we look at when there was a mistaken address. In this case, it seems like all of those factors are satisfied. Tell me where I'm wrong. Where you're wrong, Your Honors, in every one of those cases, and it was a key factor, and it's also a key factor when you look at the Supreme Court's concern in Grovey-Ramirez, in every one of those cases, there was a description in the warrant besides the address that made it clear what property was really intended by the judge who signed the warrant. Here in Turner, there's a list of about 10 or 11 details. In Mann, there's a list of several details. In the other cases, there's a list of details that were included in the warrant description. So it was clear that, oh, yeah, this is just the wrong. In the Gitcho case, for example, the Eighth Circuit case that the government relies on, they had the wrong address, but they called them the Park Chalet Apartments. And, in fact, it was the Park Chalet Apartments. As I read the cases, that's not determinative, but it's something that allows us to conclude that, A, it was a mistake, and, B, we hadn't given a general warrant to the cops, as you call them, to go search all around in the neighborhood. I read the cases differently, Your Honor. Certainly they can be read differently, and I think this Court doesn't want to create split in the circuits with the Tenth Circuit. You try to reconcile your case law with the Tenth Circuit's case law, and the very easy way to reconcile it, certainly something that they paid critical attention to in the Ninth Circuit cases, is the fact that, yeah, they got the number of the street wrong, but there's all this other stuff that makes it clear that's what they meant to search. And that's what the judge – more important, that's what the judge – But you're saying all this other stuff must appear on the face of the warrant as opposed to be in the record anyway? Because here there's plenty of other evidence that this was the place they intended to search. Meaning the officer's testimony that that's what they meant, basically. Yeah. And two reasons why. And also they had followed – I mean, there was plenty of evidence why this was the place they followed their client to that place. But I think Williamson makes a very good point. If you're going to rely on that, then 90 percent of the time you're going to say, well, the warrant doesn't matter, because the cops meant to search that, and that's what they searched. It's going to be very rare that officers are going to search something they didn't mean to search. It's a waste of their time. The whole point of a warrant – and this is what Grover v. Ramirez recognizes is important also – is that the person whose premises are being searched know, not even just that's what the cops wanted to do, but that's what the judge authorized. So if I understand your argument – I know you want to save a couple minutes – it's the warrant was no good. Even if the initial consent was okay, that doesn't cover the second search, and therefore the fruits of the second search ought to be suppressed. Correct. Is that your argument in a nutshell? Correct. And also I think there's a second issue that I'm not going to probably have time to address, and that's whether the consent included the Chevy Cheyenne, which is where the most important evidence from the first search was found. Remember, the consent has this one place where it says all vehicles, but in another place in its summary it says travel trailers and O4 tempo. So I think with applying a sort of rule that consents need to sort of be construed, you know, narrowly because you don't infer consent readily under this Court's case law. It's not even clear the consent saved the first search. Let me ask you one other question, because I know you want to save time. But is it also true that if the warrant is valid, then all the – then there's no other – there's no reason for us to consider consent or the scope of the consent? No, because the warrant did not allow the search of the Chevy Cheyenne. And that's your argument, even if valid, the warrant didn't allow the search of the Chevy. Correct. And that's in the briefs I probably shouldn't use my time on. There is the severance issue, and I certainly don't want to waive that, but I'll submit given my time constraints. Thank you. May it please the Court. My name is Robert Gombiner, and I represent Ronald Cattell's. The drug evidence about the defendants in this case was extremely prejudicial, and the prejudice is really in inverse proportion to its relevance. And moreover, the prejudice that flowed from the introduction of that evidence wasn't dissipated by the Court's instruction. You want us to find – we review this for abuse of discretion, don't we? That's correct. And tell us why the decision was so unreasonable that it amounts to an abuse of discretion. The decision was unreasonable because the evidence didn't establish anything that showed that prior to any of the bank robberies, the defendants weren't using drugs. The evidence was clear that they were using drugs prior to the commission of any of the robberies. There was no change in the circumstances testified to by anyone after the robberies. But it still established a motive for the robbery, did it not? They needed money to pay for the drugs. Well, that argument is really in conflict with this Court's precedence. It's what the district court concluded, right, in weighing the prejudice argument? Well, first, it's not clear that the district court ever considered the prejudice argument. It certainly never said anything about it in his ruling. The problem with the district court's analysis was that – and I realize that abuse of discretion is – it's a fairly high standard, but I think we meet it here because what happened was the district court said, Well, unless the jurors hear about all the defendants' drug use, they're going to be wondering where the money went because the defendants weren't living in, you know, Martha Stewart kind of situation. You mean when she went to jail? Who knows? I'm sorry? She went to jail. That's a good point. We need a better analogy. I can pick someone else. In the luxury of that mansion in Montana that was going to cost $10,000. That's right. That's a better example. But in any event, that's all – so the judge then said, Well, the government's got a good point. The jurors are going to be wondering, Well, where did the money go? But, of course, you could say that about anyone who is poor who robs a bank. There's no – it's just because – Well, stop it. I mean, there's some logic in that. If you've got somebody that's made away with a lot of money and they're living in poverty and there are no signs of any money stashed away, sure, for that other person, I'd have the same question unless you can show they're pouring it down the toilet someplace. But there might be some logic to that. If the defense had argued, Look, they couldn't have committed these robberies because they're so poor, I would concede that the drug use could come in as rebuttal of that. But there was no such argument here. All you've really got in this case is you've got existing at the same time the defendants are using drugs and then the allegation that the defendants are robbing banks. I mean, everybody needs money for something. You know, the cases I cited – and I realize this is an out-of-circuit case, but I do think it's a very relevant one – that Sutton case makes the very good point that basically people rob banks because that's where the money is. It's not only the Sutton case, it's the Sutton statement, isn't it? Right. It's an interesting coincidence. Let's assume for a second that there's no other error in this trial, which I know is not your position or your co-counsel's position. But let's assume that we march through the nine arguments and we get to – and find none of them availing and get to the last one, which is this one. If the fruits of the search were appropriately introduced and everything else in the cases shouldn't have been severed or the counts shouldn't have been severed, is this – how does this error affect? In other words, the cops followed the getaway car to this location and they discovered all sorts of incriminating evidence. Does the drug use really make a difference at that point? I think it does, Your Honor. And I think the Mitchell case, which I cite in my brief, is an excellent example of this because it really involves a very similar set of facts. And it results in the Mitchell, the conclusion that the error-admitting poverty evidence wasn't harmless because just as in this case in Mitchell, they find in the guy's – Mitchell's apartment, they find a backpack associated with the robbery. They find other items associated with the robbery. But just as in this case, they didn't have the traditional evidence that's often associated with bank robberies, such as there's no dye pack stains on them. Yeah, but they do have something extra here. Somebody identifies the getaway car and they find a car that meets the description of the getaway car and they follow it, right? Well, that's not actually entirely accurate because Mr. Trask, who is the person who supposedly saw the getaway car, first says that he saw – he says it's a Volkswagen or a Honda. And second, he says – he specifically testified to this. He said that he didn't think that the robbers could have been in their 60s. But it turns out he was wrong on both of those things, right? I mean, it's not – we now know your guys were the robbers, don't we, by virtue of the search? Well, I don't think that's – actually, I don't think that's true. I think – I would concede that the evidence found on the property is certainly pretty probative of there being – associated with the robberies. But the issue isn't whether or not they found evidence that had something to do with the robberies. The issue that the defense argued was, were they actually the robbers? What was their identity? And in that case, the fact that Mr. Trask says that these were people who were younger than 60 and also identifies a different make of car, that's the kind of thing that can lead to reasonable doubt. That's the kind of situation where prejudice from something like drug evidence can make a difference. So I don't think it's – we didn't raise the sufficiency of the evidence argument. I think in a previous case you pointed out it's a pretty daunting burden. But that's not the test for harmless error. So I think we've got a separate situation in this case. Let me ask a question about an argument that your counsel didn't have time to get to, and I'm not sure it's your primary argument. But on severance, is this a Rule 8 argument or a Rule 14 argument? Well, that is – I believe it's a Rule 14 argument. Because the case is cited in Rule 8. And so I'll let your counsel do that. I'll let Mr. – I think Mr. Gunn should answer that. But I know you adopted that. I adopted – we adopted all the arguments. The other argument – I could go on with the drug argument, but I would like to briefly address the Franks issue, because I think the government and the court especially sort of misconceived the thrust of the Franks argument, which was that there was not an argument that this was – that police were intentionally misleading the magistrate. It was an argument, and I think an argument well supported by the evidence, that the police conduct in constructing the warrant was reckless. And – Tell me – I'm interested in that. Tell me why you think there's evidence here of recklessness. In effect, we have to say the district judge erred in finding the absence of recklessness. Right. The reason it was reckless was this. There were a number of police officers at the scene. And the person who was delegated to do the warrant was Detective Barrett. And Detective Barrett, unfortunately, was the officer who was the least conversant with the facts. She had not really played any significant role in the investigation. So you've immediately created a situation where all the information that the police as a whole possess is being transmitted to a person who isn't familiar with a fairly complicated subject. Why isn't that just negligence? If the last officer were your client here and she was being charged with recklessness, or the first officer, we would say, oh, come on, that's just negligence. Why isn't this just a negligent passing on of information up the chain? Well, negligence – the line between negligence and recklessness obviously can be a little fuzzy. But it's reckless because not only does the police give the task to Detective Barrett, but she's assembling the warrant under what the government itself concedes were extremely difficult circumstances. She's basically sitting in a patrol car typing away on a laptop computer in a situation in which there are absolutely no exigent circumstances. They've got the two people who they think are the bank robbers in custody. The property's not going anywhere. But they just get the wrong address. She types in the wrong address. Either she types in the wrong address or somebody gives her the wrong address. The record doesn't tell us that, right? It's not just the address that's wrong. The Franks issue turned on a large number of important distortions, misstatements. With respect to those, is there any evidence that the judge wouldn't have granted the warrant if the omitted information were included? Well, I mean, the judge obviously didn't testify. He was on the spot. He said, look, it doesn't matter because once you told me you followed people to the place who somebody had described as the bank robbers, I think that's enough to get the first assertion. But for one thing, first, they didn't follow the robbers. I know. The robbers found them. They found the car that matched the kid. They showed up and then they arrested them basically. But here's the point. If the judge had known that the person who supposedly saw this car with the license plate number, in fact, had identified a different car and had said that the robbers couldn't be 60 years old, if the judge had known that the person in the first bank robbery had said, I did not identify the robber, but I was 60 to 70 percent sure that the robber was, that it was Mr. Sexton, if the judge had known that instead of the Mr. Stone finding a pistol, which is a very damaging assertion, that, in fact, he had found a toy pistol, if the. . . And here's my difficulty, so I want you to address it. These all seem like material things to me sitting here today. But you said your Franks argument was made to a judge. And the district judge said, I'm not sure in the end that would have made any difference. I know it wasn't the same judge who issued the warrant. No. It was a Washington State district court judge who issued the warrant and a Federal judge who. . . How do we review the judge's determination that none of this was sufficiently material? Well, I think. . . Do we review it de novo or do we review it. . . I think you do. . . What you do is you redact the warrant to include the information that should have been included in the first place, and then you look at the redacted warrant and you determine, is that sufficient to make our probable cause? And my contention is that if you do that in this case and you put in all. . . If you put in the correct information. . . Let me interrupt you. No, no, no. It's a strange argument because it's not a redaction. What you're saying to us is that we should have assumed that when they went to the judge, accurate information was provided. And what you're asking us to assume is that the judge wouldn't have granted the warrant given that omitted information, right? Right. What I'm saying is that the. . . I think I'm out of time. But please answer. But the. . . But the judge. . . My contention is the judge who signed the warrant was entitled to get accurate information. If the judge had gotten that accurate information, that accurate information would have led him to conclude we don't have enough at this point. . .      . . . . . . . . . . . . . . . . . . . . . . . .   . . . And so that's why he used it. Okay. Thank you very much. Thank you. And we'll hear from the government. May it please the Court, Counsel, Francis Franzi Nakamura on behalf of the United States. .
judges: Clifton, Smith, Hurwitz